# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

RODRIGUEZ SPEAR,   )
                   )
    Petitioner,   )
                   )
v.                 )   Case No. CV405-179
                   )
TONY HOWERTON, *Warden*,   )
                   )
    Respondent.   )

## **REPORT AND RECOMMENDATION**

Petitioner Rodriguez Spear filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on September 29, 2005. (Doc. 1.) On July 17, 2006, the Court entered an Order dismissing the petition. (Doc. 27.) Petitioner appealed. (Doc. 30.)

On appeal, the Eleventh Circuit considered whether this Court erred in finding that petitioner procedurally defaulted five claims of ineffective assistance of trial counsel by failing to raise them in state court. (Doc. 50.) The Eleventh Circuit concluded that petitioner exhausted the following claims: (1) counsel pursued an insanity defense

against his wishes; (2) counsel failed to present witnesses in his behalf; (3) counsel failed to provide him with an adequate defense; (4) counsel failed to present evidence on his behalf; and (5) counsel failed to object to the admission of similar transaction evidence. (Id.) The appellate court vacated the decision of this Court as to these claims and remanded the case for further consideration. (Id.) In accordance with the Eleventh Circuit's decision, this Court will now consider these five claims on the merits.

## I. FACTUAL BACKGROUND

The Georgia Supreme Court made the following findings of fact, which are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1):

> The evidence adduced at trial supported finding as facts the following. The victim was found beaten to death, the apparent instrument of the beating a brick found beside her body. In addition to injuries to the back of her head which were fatal, the victim had numerous lacerations and abrasions on her body and face; her face was covered with blood; and her eyes, mouth, and nose were bruised and swollen. She had earlier been heard arguing with a man about money and sex, then had left with the man, going in the direction of the place where her body was found. A resident of an apartment outside which the victim was found called the police after finding her body while investigating a

2

"thumping" sound that woke him up around 4:30 a.m. He reported seeing a man walking away and described his clothing. Spear was stopped by police officers less than half an hour after the discovery of the body was reported, just over a mile away. His clothes matched those described and his hands and shirt were bloody. Spear denied involvement with the victim and claimed the blood was due to a fight with a person whom the police were subsequently unable to find. Spear was detained long enough for a blood sample to be drawn. On the day after the killing, Spear asked two women to call a Silent Witness hotline and give false tips regarding the killing. Spear later told the police that he had seen the victim after she was killed and had searched her body for money, getting her blood on him. The blood on him and his clothes was discovered to be both Spear's and the victim's. Cuts on his hands could have been made by the fingernail scissors found clutched in the victim's hand. The victim in this case was identified as a prostitute, and the State presented similar transaction evidence showing that, on a previous occasion, another prostitute went to Spear's residence to have sex, but a dispute arose concerning money, and Spear hit her in the head with a hammer.

Spear v. State, 513 S.E.2d 489, 490-491 (Ga. 1999).

## II. LEGAL FRAMEWORK AND ANALYSIS

In reviewing a claim previously adjudicated by a state court, a federal habeas court may grant relief only if the state decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable application of the

3

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362 (2000).

The remaining claims for consideration on this remand all relate to the alleged ineffectiveness of petitioner's trial counsel. To establish ineffective assistance of counsel, petitioner must satisfy the two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Second, petitioner must demonstrate that the defective performance prejudiced his defense to such a degree that the results of the trial are called into question. Id.

Under the first prong, deficient performance is "that which is objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990); Brooks v. United States, 248 F. App'x 77, 80 (11th Cir. 2007). The reasonableness of the attorney's performance is to be evaluated from counsel's perspective at the time of

4

the alleged error and in light of all the circumstances. Strickland, 466 U.S. at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; this is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Strickland, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

With these considerations in mind, the Court will now address the ineffective assistance of counsel claims that it failed to consider in its prior review of Spear's habeas petition.

**A. Insanity Defense**

Petitioner claims that he received ineffective assistance of trial counsel because his attorney pursued an insanity defense against his

wishes. (Doc. 1 at 7.) Petitioner also raised this issue during the trial. (Trial Tr. at 11.) Prior to jury selection, petitioner's defense attorney called him to the stand to testify about why he was dissatisfied with her services. (Id.) Petitioner claimed that, despite his objections, defense counsel focused her efforts on presenting an insanity defense rather than an innocence defense, thus failing to look into other defensive avenues and failing to discover possibly exculpatory evidence. (Id. at 11-14.) The district attorney responded that defense counsel hired an investigator who spoke with several of the state's witnesses, looked at the file several times, filed discovery motions, and looked over the evidence at the crime lab. (Id. at 15.) The district attorney further stated that she had "seen nothing but competence in the way that [trial counsel] has represented the defendant in this case." (Id.) The trial judge agreed that defense counsel performed competently and stated that he knew "by the motions she's been involved with already in this case she's done all she can do." (Id.) Ultimately, defense counsel withdrew the issue of competency to stand trial prior to the jury being impaneled. (Id. at 21.)

The state habeas court considered whether petitioner's defense counsel was ineffective for pursuing an insanity defense over his

6

objections. (Doc. 12, Ex. 3 at 12.) At the habeas hearing, defense counsel testified that she subpoenaed all of petitioner's medical records from his childhood on, and after reviewing them, she felt that insanity was his best defense. (Id. at 15.) However, after hiring two psychiatrists who evaluated petitioner and stated that he was competent to stand trial, she abandoned the insanity defense. (Id.) Applying the standard set forth in Strickland, the state habeas court found that trial counsel's decisions were reasonable in this case. (Id.)

This Court finds that the state habeas court reasonably determined the facts and correctly applied Supreme Court precedent in addressing this claim. 28 U.S.C. § 2254(d). Defense counsel adequately investigated several possible defenses in petitioner's case. She interviewed several witnesses and thoroughly researched the case. Her decision to pursue the insanity defense and to later abandon it constituted sound trial strategy. The state habeas court correctly determined that her actions were not unreasonable, and thus petitioner has failed to satisfy the first prong of the Strickland analysis in regards to this claim.

**B. Witness Presentation**

Petitioner claims that counsel was ineffective for failing to present witnesses on his behalf. (Doc. 1 at 11.) Although his current petition does not identify any particular witnesses, at the hearing on his motion for new trial, petitioner alleged that counsel was ineffective for failing to call four specific witnesses on his behalf. (Doc. 12, Ex. 2, Habeas Court Ex. 5 at 5-11.)

During the hearing, petitioner first claimed that trial counsel erred in failing to call Kenneth Oliver as a witness. (Id. at 6.) Petitioner alleged that he was with Mr. Oliver from around 3:30 or 4:00 p.m. until 8:00 p.m. on the day of the murder. (Id. at 7.) He alleged that Oliver would have testified that on the day of the murder petitioner did not have a lot of money and that his "demeanor around that time was nothing of a violent nature." (Id.) Petitioner claimed that Oliver would testify that he did not meet with the victim on the day of the murder and that he did not know the victim. (Id.)

During the motion for new trial, defense counsel explained that she did not call Mr. Oliver because petitioner made inconsistent statements during trial and to the police regarding the time he spent with Mr. Oliver on the day of the murder. (Id. at 18.) During trial, petitioner testified

that he had been with Mr. Oliver all day, whereas he had previously told police that he was headed to Mr. Oliver's house in the middle of the night. (Id.) Defense counsel further testified: "And I thought if he had been with him all day and then for him – for us to put Kenny on the stand, even if Kenny could have said, yes, he was with him all day, why would he be going in the middle of the night to Kenny's house again." (Id.) She stated that she believed putting Mr. Oliver on the stand would hurt petitioner's defense more than it would help it. (Id.)

Petitioner also alleged that trial counsel erred in failing to call Lorraine Williams as a witness. (Id. at 7.) Lorraine Williams was a nurse whom petitioner had a crush on. (Id.) Petitioner claimed that her testimony would establish that he did not know the victim from the hospital. (Id.) He admitted that his defense counsel hired a private detective who spoke with Ms. Williams. (Id. at 8.) The state argued that Ms. Williams would not testify to what petitioner alleged she would testify. (Id. at 9.) Petitioner's defense counsel testified that she did not call Lorraine Williams because she had absolutely nothing to do with any of the events that occurred on the night of the murder, and therefore she did not see how she could add anything to help the defense. (Id.)

9

Petitioner further alleged that trial counsel erred in failing to call his brother, Phillip Howard, as a witness. (Id.) He claimed that his brother would testify that he did not have any money, and he would provide insight into his demeanor and state of mind. (Id. at 10.)

Finally, petitioner contended that trial counsel erred by failing to call his cousin, Kenneth Robert Moore, as a witness. (Id.) He argued that Moore would testify that Tasha Owens, a prosecution witness in the trial court, told him that "she would lie on a man for the hell of it because it was her way of getting justice 'cause she had got beat in the head and raped." (Id. at 11.) The state objected on the basis that this statement was hearsay. (Id.) Petitioner's defense counsel did not recall discussing Phillip Howard or Kenneth Robert Moore with petitioner. (Id. at 19.)

During his state habeas case, petitioner also argued that he received ineffective assistance of counsel due to counsel's purported failure to present any witnesses at trial. (Doc. 12, Ex. 3 at 12.) The habeas court found that counsel's decision not to present any witnesses on behalf of the defense was a strategic decision that was not so patently

unreasonable that a competent attorney would not have chosen the same course of action. (Id. at 13.)

This Court agrees with the state habeas court that defense counsel's decision not to call any witnesses on petitioner's behalf was reasonable, and thus this ground is without merit. Although petitioner was the sole witness to testify on his behalf during the trial, he admitted that he discussed the witnesses with his trial counsel many times. (Doc. 12, Ex. 2, Habeas Court Ex. 5 at 6.) None of the witnesses were alibi witnesses, and there were no eye-witnesses to the murder. (Id. at 17.) Petitioner's defense counsel also testified that she cross-examined each and every one of the state's witnesses. (Id. at 19.) She further testified that she filed discovery and looked through the case file for "hours and hours." (Id. at 19-20.) The judge noted during the hearing that statements concerning what Ms. Williams and Mr. Howard would have testified to appeared to be hearsay. (Id. at 10.) Therefore, counsel's decision not to call witnesses on petitioner's behalf was reasonable. The state habeas court's factual determinations were not unreasonable and that Court correctly applied Supreme Court precedent. 28 U.S.C. § 2254(d). Petitioner, therefore, is not entitled to relief on this claim.

## C. Evidence Presentation

Petitioner further alleges that trial counsel erred in refusing to present any evidence on his behalf. (Doc. 1 at 13.) Once again, petitioner fails to provide any facts supporting this ground in his current petition. However, during the motion for new trial hearing, petitioner argued that his counsel should have had the brick examined for fingerprints and argued that his fingerprints were not on the brick that killed the victim. (Doc. 12, Ex. 2, Habeas Court Ex. 5 at 14-15.) He further argued that a shirt which the prosecution entered into evidence was not properly examined by the jury. (Id.) The state pointed out that the shirt had the victim's blood on it. (Id. at 15.) Petitioner contended that defense counsel should have argued that "[t]he blood was not consistent with what it would have been if I actually committed this act." (Id. at 16.)

Trial counsel explained that she cross-examined a witness about the brick and that the witness stated he could not obtain latent prints from it. (Id. at 20.) In addition, she cross-examined the state's

12

pathologist regarding the blood on petitioner's shirt. (Id.) She further testified that the shirt went back with the jury when they went to deliberate. (Id.)

Petitioner also raised this claim during the state habeas case. (Doc. 12, Ex. 3 at 12.) After noting that trial counsel spent hours reviewing discovery material, spoke with defendant on numerous occasions, filed a motion to obtain funds to hire an investigator, hired an investigator, interviewed witnesses, and spent a total of 106.6 hours in out-of-court preparation for the case, the habeas court concluded that her decision to discredit the state's witnesses and preserve the final closing argument rather than presenting evidence was a strategic one. (Id. at 13.) The habeas court found, and this Court agrees, that that decision was not so patently unreasonable that a competent attorney would not have chosen the same course of action. As the state court reasonably determined the facts and correctly applied Supreme Court precedent, this ground is without merit.

### D. Similar Transaction Evidence

Petitioner alleges that counsel erred by failing to object to the admission of similar transaction evidence. (Doc. 50 at 2.) Prior to

conducting *voir dire*, the trial court considered the state's similar transaction motion. (Trial Tr. at 3.) The state sought to introduce evidence of a battery that occurred on December 6, 1994 in order to show identity, plan, scheme, bent of mind, course of conduct and modus operandi. (Id.) The state alleged that in the previous incident and the instant case both victims were alone with the defendant when the violent act occurred, both were black females, both violent incidents were preceded by arguments, and both of the victims were injured. (Id. at 3-4.) The two events occurred within one year and three months of each other in Chatham County. (Id. at 4-5.) Both victims were struck in the back of the head with blunt objects. (Id. at 5.) In both cases, petitioner was trying to get his money back from the victims. (Id. at 6.) The state also alleged that there was sufficient evidence to establish that petitioner committed the similar offense since after being found at the scene, he admitted to the responding officer that he committed the offense. (Id. at 3-4.) In addition, the victim identified petitioner as the perpetrator. (Id.) Defense counsel objected to the introduction of the similar transaction evidence. (Id. at 6.) However, despite her objections, the trial judge allowed the evidence in "to show identity, bent of mind, course of

conduct, and modus operandi, rather than plan and scheme." (Id. at 8.) The judge excluded evidence regarding another similar transaction. (Id. at 20.) The court agreed to give a limiting instruction. (Id. at 8.)

During the state habeas case, petitioner also raised this claim. (Doc. 12, Ex. 3 at 14.) The habeas court found, based on a review of the record, that the prior act of violence was sufficiently similar to the conduct alleged in the indictment to be admissible to show petitioner's identity, bent of mind, course of conduct, and modus operandi. (Id. at 7.) Therefore, counsel's failure to request a mistrial was not unreasonable. (Id. at 14.) The state habeas court reasonably determined the facts and correctly applied Supreme Court precedent in concluding that counsel did not err in failing to request a mistrial based on the admission of the similar transaction evidence. Accordingly, this ground for relief should be denied.

### E. Failure to Provide an Adequate Defense

Finally, petitioner alleges that trial counsel erred in failing to provide him with an adequate defense. (Doc. 1 at 12.) As this court has indicated above, counsel spent many hours researching petitioner's case file, conducting discovery, interviewing witnesses, and preparing his

defense. Defense counsel thoroughly cross-examined the state's witnesses and filed multiple motions on petitioner's behalf. Petitioner has failed to show that counsel's performance was deficient or that it prejudiced the defense, and the state court properly concluded that defense counsel had met the Strickland standard of effective assistance. Therefore, this claim should be denied.

## III. CONCLUSION

For the foregoing reasons, the Court should **DENY** this § 2254 petition. All pending motions should be **DISMISSED** as moot.

**SO REPORTED AND RECOMMENDED** this 30th day of May, 2008.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**